UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 11-12039-RWZ


COEURDALENE LaPIERRE

v.

CITY OF LAWRENCE, *et al.*


MEMORANDUM OF DECISION

May 1, 2013


ZOBEL, D.J.

Plaintiff Coeurdalene LaPierre went out one evening with a group of friends for a birthday celebration. Over the course of the night, she became separated from her friends and met defendant Kevin Sledge, a Lawrence police officer. Sledge took LaPierre back to the police station in his personal car, and left her sleeping in the car in a nearby parking lot. While on duty in the station, Sledge returned to his car five times that night and repeatedly assaulted and raped LaPierre.

Sledge was convicted of three counts of indecent assault and battery and one count of rape. He was sentenced to ten years in prison.

LaPierre filed this suit against Sledge, the City of Lawrence, and Lawrence police chief John Romero, alleging violations of her civil rights and also negligence. The City and Romero now move to dismiss the three negligence-based counts in the complaint.

## I. Background[1]

On the evening of September 25, 2008, LaPierre went out with a group of friends for a birthday celebration that stopped at several bars and restaurants in Lawrence. At one point, LaPierre became separated from her friends. While walking to find them, she dropped her cell phone, which broke.

LaPierre accepted a ride from a group of strangers to a nearby garage, and then went across the street to a local restaurant to call her friends. After she entered the restaurant, Sledge approached her and asked why she was out so late. LaPierre explained the situation; Sledge then told her that he would bring her back to the police station in his personal car, a silver Jaguar, so that she could get in touch with her friends from there. As Sledge drove LaPierre back to the police station, she fell asleep in his car.

Sledge parked his car outside the police station, told LaPierre to remain in the car, and reclined her seat. LaPierre remained in the car for some time, sleeping and waking up from time to time. She recalls waking up several times to find Sledge touching or fondling her in an unwelcome manner. She also recalls waking up once to find Sledge on top of her and thrusting himself onto or into her, and waking up again with her pants down and Sledge's hand inside of her. Video surveillance at the police station shows Sledge leaving the building and walking towards his car approximately five times over the course of the night.

---

[1] As appropriate on a motion to dismiss, the facts here are given as alleged in the complaint. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 4 (1st Cir. 2011).

LaPierre was eventually picked up by a friend and reported the sexual assault. Sledge was criminally charged and convicted of three counts of indecent assault and battery and one count of rape. He was sentenced to ten years in prison.

LaPierre then filed this action, suing not only Sledge but also the City of Lawrence and its police chief John Romero.[2] As to the latter defendants, collectively "the City defendants," the complaint alleges that they were aware of prior allegations of physical and sexual assault by Sledge, including a prior criminal trial for rape during his employment as a police officer. The City was also apparently aware that Sledge had left his post periodically to engage in sexual conduct with other individuals. In fact, the City had raised Sledge's "inappropriate and high risk sexual behavior while on duty" as a defense to a discrimination action that Sledge had previously filed. Docket # 1, Ex. A. (Compl.) ¶ 50. Nevertheless, the City defendants allegedly took no appropriate action to supervise or train Sledge in order to prevent such behavior. Finally, the City defendants had video cameras observing the premises outside of the police station, but the complaint alleges they failed to properly monitor those videos.

The complaint includes six counts. Counts I and II state claims under 42 U.S.C. § 1983 against Sledge, Romero, and the City for violating LaPierre's constitutional rights; Count III states a similar claim against all defendants under Mass. Gen. Laws. ch. 12, § 11I. There has been no motion to dismiss as to those three counts.

Instead, the City defendants have moved to dismiss Counts IV, V, and VI of the complaint. Count IV seeks damages from the City defendants for negligence in

---

[2] Sledge has failed to defend against the complaint, and a default has been entered against him.

employing, supervising, and training Sledge. Count V alleges negligent infliction of emotional distress by all defendants. Finally, Count VI seeks damages from the City defendants for negligence in monitoring the police station premises, including the parking area where LaPierre was raped.

## II.  Legal Standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court accepts as true all factual allegations contained in the complaint, but not legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). If the complaint fails to state a plausible claim upon which relief can be granted, it must be dismissed. Id.

## III.  Analysis

The Massachusetts Tort Claims Act ("MTCA") creates an exclusive remedy against public employers for negligent or wrongful acts by their employees. Mass. Gen. Laws ch. 258, § 2. However, that remedy is limited by particular exceptions listed in section 10 of the act. The City defendants assert that two of those exceptions apply here.

### A.  Section 10(c)

First, the City defendants claim that Counts IV, V, and VI fall under section 10(c), which states that the MTCA does not apply to "any claim arising out of an intentional tort." Mass. Gen. Laws. ch. 258, § 10(c). Section 10(c) ensures that public employers will not be directly liable for intentional torts committed by their employees. LaPierre therefore cannot sue the City defendants directly for the rape committed by Sledge.

See Spring v. Geriatric Auth. of Holyoke, 475 N.E.2d 727, 734 & n.9 (Mass. 1985).

But Counts IV, V, and VI do not seek to hold the City defendants liable for

Sledge's intentional acts. Instead, those counts seek to hold the City defendants liable

for their own negligent acts in training, supervising, and employing Sledge and in failing

to monitor their premises. As such, the claims are not barred by section 10(c). See Doe

v. Town of Blandford, 525 N.E.2d 403, 407-08 (Mass. 1988); see also Chaabouni v.

City of Bos., 133 F. Supp. 2d 93, 96-98 (D. Mass. 2001).

## B.  Section 10(j)

Second, the City defendants argue that Counts IV, V, and VI fall under section

10(j), which exempts from the MTCA:

> [A]ny claim based on an act or failure to act to prevent or diminish the harmful
> consequences of a condition or situation, including the violent or tortious
> conduct of a third person, which is not originally caused by the public employer
> or any
> other person acting on behalf of the public employer.

Mass. Gen. Laws ch. 258, § 10(j). Broadly, section 10(j) protects public employers

against liability for failing to prevent harm caused by others. The City defendants argue

that Counts IV, V, and VI impermissibly seek to hold them liable for failing to prevent

Sledge from sexually assaulting LaPierre.

It is not clear how section 10(j) should apply to a claim that a public employer

negligently failed to supervise or train a public employee. On the one hand, it is clear

that a public employer is not liable for failing to prevent a tort by a private third party.

Thus, for instance, a school cannot be held liable for failing to keep armed assailants

from murdering a student on campus. Brum v. Town of Dartmouth, 704 N.E.2d 1147,

1150, 1152-55 (Mass. 1999). Likewise, a parole officer cannot be held liable for failing to keep a parolee from raping a victim. Bonnie W. v. Commonwealth, 643 N.E.2d 424, 426 (Mass. 1994). But the Supreme Judicial Court of Massachusetts ("SJC") has not yet decided any case applying that same rule to a public employer's failure to prevent a tort by one of its own employees. And indeed, the statute clearly does not bar claims that allege the harmful "condition or situation" at issue was "originally caused by . . . [a] person acting on behalf of the public employer."  Mass. Gen. Laws ch. 258, § 10(j). The plain language of the statute thus indicates a public employer should be liable for negligently failing to prevent harmful conduct by persons acting on its behalf.

That interpretation is supported by dicta in one recent First Circuit case noting that "Massachusetts cases have . . . allowed supervisory negligence claims against municipalities where the municipality knew or should have known about an underlying, identifiable tort which was committed by named or unnamed public employees." Kennedy v. Town of Billerica, 617 F.3d 520, 533 (1st Cir. 2010) (citing two SJC cases decided before section 10(j) was enacted). It is also supported by two cases from this district, decided after section 10(j) was enacted, that allowed negligent supervision claims against municipalities to proceed. See Chaabouni, 133 F. Supp. 2d at 95-98; Sheehy v. Town of Plymouth, 948 F. Supp. 119, 121-26 (D. Mass. 1996).  However, none of those cases explicitly discussed whether section 10(j) was applicable.

On the other hand, a number of cases from this district have specifically held that section 10(j) does bar claims that a public employer failed to adequately supervise or train a public employee who then committed an intentional tort. See Chao v. Ballista,

Civil Action No. 07-10934-NG, 2008 WL 5423206, at *3 (D. Mass. Oct. 24, 2008);

Pettengill v. Curtis, 584 F. Supp. 2d 348, 366 (D. Mass. 2008); Doe v. D'Agostino, 367

F. Supp. 2d 157, 177 (D. Mass. 2005); Ward v. City of Bos.,367 F. Supp. 2d 7, 15 (D.

Mass. 2005); Armstrong v. Lamy, 938 F. Supp. 1018, 1043-44 (D. Mass. 1996); see

also Doe v. Old Rochester Reg'l Sch. Dist., 56 F. Supp. 2d 114, 120-21 (D. Mass.

1999) (no liability for municipality's failure to prevent or mitigate its employee's

conduct); Canty v. Old Roch. Reg'l Sch. Dist., 54 F. Supp. 2d 66 (D. Mass. 1999)

(same). Under these cases, Count IV would be barred to the extent that it rests on the

City defendants' failure to properly supervise or train Sledge.

However, these same cases have also held that section 10(j) does not bar a

claim that a public employer negligently hired a dangerous employee, or assigned a

dangerous employee to a position where he could do harm. See Chao, 2008 WL

5423206, at *3 (denying motion to dismiss claim that prison officials negligently

assigned prison guard to night shift, allowing him to sexually abuse inmate); Pettengill,

584 F. Supp. 2d at 366-67 (denying motion to dismiss claim that town negligently hired

and promoted librarian who sexually abused teenage boys working at the library);

D'Agostino, 367 F. Supp. 2d at 177; Armstrong, 938 F. Supp. at 1045-46.[3] I have some

difficulty understanding this distinction. It is hard to see why a city should be liable for

negligently hiring an employee and assigning him to a position where he can do harm,

---

[3] The First Circuit has held that the discretionary function exception in section 10(b) of the MTCA bars claims that a city negligently hired a civil service employee. See Mass. Gen. Laws ch. 258, § 10(b); Crete v. City of Lowell, 418 F.3d 54, 60-65 (1st Cir. 2005). The parties have not briefed the question of whether section 10(b) applies here. I, therefore, do not consider it.

but should not be liable for negligently supervising and training him after it assigns him

there. Imagine two cases: In one, a city hires a known psychotic lunatic to be a police

officer. In the second, a city hires an apparently normal person to be a police officer,

watches the officer descend into psychotic lunacy during his employment, and

nevertheless continues to employ him in the same position with no supervision. Why

should the first city be liable but not the second?

The cases drawing this distinction apparently view hiring an employee and

assigning him to a specific position as affirmative acts, but view negligently supervising

and training an employee as negative omissions. They conclude the former can

"originally cause[]" a harmful condition, but the latter cannot. See Pettengill, 548 F.

Supp. 2d at 366-67; D'Agostino, 367 F. Supp. 2d at 176-78; Armstrong, 938 F. Supp. at

1043-46. But that act/omission distinction cannot bear the weight that the caselaw puts

on it. Negligent hiring can easily be framed as a negative omission; it usually consists

of failing to run sufficient background checks on candidates, or failing to carefully

consider suspicious information. And negligent supervision and training can easily be

framed as the affirmative act of authorizing unsupervised, unprepared employees to

conduct public business.

The distinction between causing harm and failing to prevent it makes sense

where the underlying harm is committed by a private actor. Public employers are not

expected to constantly supervise private actors, and section 10(j) makes clear that they

are not liable for failing to prevent wrongful conduct by such persons. But where the

underlying harm is committed by a public employee abusing his position, it is hard to

8

see why section 10(j) should distinguish between a public employer negligently putting

him in that position and one negligently supervising him in that position.

I therefore respectfully disagree with the previous cases finding that section 10(j)

bars a claim that a public employer negligently supervised and trained an employee.

Counts IV and V may therefore proceed on the theory that the City defendants

negligently supervised and trained Sledge. Of course, in accordance with the cases

cited above, those counts may also proceed on the theory that the City defendants

negligently hired Sledge and negligently assigned him to a position that allowed him to

sexually abuse LaPierre. See Chao, 2008 WL 5423206, at *3; Pettengill, 548 F. Supp.

2d at 367.[4]

Count VI charges the City defendants with liability for failing to properly monitor

the video cameras that observe the police station premises. Although the parties'

briefing on this issue is scanty, it appears that Count VI is squarely barred by section

10(j), since the "negligent failure to maintain adequate security measures" does not

"originally cause[]" any harm committed by a third party. Brum, 704 N.E.2d at 1150,

1152-55. In this context, it is irrelevant that Sledge was a public employee, since the

asserted negligence in Count VI stems from the City's failure to monitor its premises

rather than from its relationship with Sledge. Count VI must therefore be dismissed.[5]

---

[4] Count IV does not explicitly name negligent hiring as a theory of liability, referring instead to the City defendants' "maintaining the employment of Sledge." Compl. ¶ 80. However, the complaint does allege that the city's negligence includes "individual acts of hiring and retaining" Sledge. Id. ¶ 70; see id. ¶ 79 (incorporating previous allegations). As such, Count IV adequately states a claim for negligent hiring.

[5] Count VI is not saved by section 10(j)(3), which denies municipalities immunity against "any claim based on the negligent maintenance of public property." Mass. Gen. Laws ch. 258, § 10(j)(3). LaPierre's claim is not based on negligent maintenance—she does not claim, for instance, that the video

---

cameras were broken. She only claims that the City defendants negligently failed to monitor those cameras.

## IV. Conclusion

The City defendants' motion to dismiss (Docket # 23) is ALLOWED IN PART

AND DENIED IN PART. Count VI is DISMISSED; the other counts may proceed.


|                          |                             |
|--------------------------|-----------------------------|
| May 1, 2013              | /s/Rya W. Zobel             |
| DATE                     | RYA W. ZOBEL                |
|                          | UNITED STATES DISTRICT JUDGE|

11